Kay Fitz-Patrick (SBN 252977)
fitzpatrickk@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400
Facsimile: 424.204.4350

Attorney for Plaintiff
    CITIBANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIBANK, N.A.,<br><br>                              Plaintiff,<br><br>        v.<br><br>FLETCHER CARLTON ALFORD,<br><br>                              Defendant. | Case No. 3:19-cv-838<br><br>**COMPLAINT FOR BREACH OF CONTRACT (PROMISSORY NOTE)** |

**COMPLAINT**

Plaintiff Citibank, N.A., ("Citibank") through counsel, for its Complaint against Defendant Fletcher Carlton Alford ("Alford"), a citizen of California, alleges and states as follows:

PARTIES

1.      Citibank is a federally chartered national banking association that transacts business in California.  Citibank is not a citizen of California for purposes of determining the state of domicile for federal diversity jurisdiction.

2.      Fletcher Carlton Alford is an individual citizen of the state of California, who, upon information and belief, lives at 20 Crolona Hts, Crockett, CA 94525-1102 and works at 275 Battery Street, Suite 2000, San Francisco, CA 94111.

JURISDICTION

3.      Citibank brings its complaint under federal diversity jurisdiction, 28 U.S.C. § 1332,

DMEAST #35645561 v4

COMPLAINT

as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

4.     This Court has personal jurisdiction over Alford because Alford resides and maintains employment in California.

5.     In addition, as further described below, the promissory note underlying this action specifically provides that in any action or proceeding brought against Alford arising from his obligations under the promissory note, Alford irrevocably submits to the jurisdiction of any state or federal court sitting in San Francisco.

VENUE

6.     Venue is proper in this Court pursuant to 28 U.S. C. § 1391(b)(2) because the obligations to be performed by Alford arose in this district, and the promissory note underlying this action was executed within this district.  Further, venue is proper pursuant to 28 U.S.C § 1391(b)(1), because Alford lives and works in California and, as such, is a resident of the State of California.

7.     Venue also is appropriate in this Court because the written promissory note, described further below, provides that any action or proceeding arising out of or related to the agreement may be in any federal or state court sitting in San Francisco.

INTRADISTRICT ASSIGNMENT

8.     Intradistrict assignment to the San Francisco or Oakland Divisions is appropriate pursuant to Civil Local Rule 3-2(c) and (d) because a substantial part of the events and omissions giving rise to Citibank's claim occurred in San Francisco County and Contra Costa County.

BACKGROUND

9.     On April 25, 2013, Citibank extended a term loan to Alford in the original principal amount of $424,000.00 ("Loan").  In exchange for these loan proceeds, Alford executed a Term Note ("Term Note").  A true and correct copy of the Term Note is attached as **Exhibit 1.**

10.     At the time of the making of the Term Note, Alford was a newly admitted proprietary partner of the law firm of Dentons LLP ("Dentons"), and the proceeds from the Term Note were paid to Dentons to satisfy Alford's capital contribution requirements to that firm.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

11.     Pursuant to the provisions of the Term Note, Alford agreed that he would pay the principal sum of $424,000.00, plus interest and other charges set forth therein, in annual installment payments until paid in full.  *See* Ex.1 at ¶¶ 1-2.

12.     Pursuant to the provisions of the Term Note, Alford agreed to pay "all costs and expenses, if any, in connection with the collection or enforcement of the Obligations (whether through negotiations, legal proceedings, or otherwise), including without limitation reasonable attorneys' fees [.]"  *See* Ex. 1 at ¶ 15.

13.     The Term Note provides that Alford will be in default if he "cease[s] to be affiliated with the firm or company with which [he was] currently affiliated."  *See* Ex. 1 at ¶ 11(c).

14.     Alford ceased to be affiliated with Dentons in or around September 2014, thereby defaulting under the terms of the Term Note.

15.     Citibank filed suit against Alford to enforce the terms and provisions of the Term Note on August 5, 2015 in the Superior Court of California, County of Contra Costa, Case MSC15-01375 ("2015 Lawsuit"), at which time the entire balance due under the Term Note plus interest, costs, and reasonable attorneys' fees were due and owing.

16.     In the 2015 Lawsuit, Alford maintained that he had pertinent claims against his former employer, Dentons.

17.     To avoid uncertainty and expense and in exchange for the mutual covenants contained therein, Citibank and Alford executed a Settlement and Tolling Agreement ("Tolling Agreement"), following which the 2015 Lawsuit was dismissed without prejudice.  A true and correct copy of the Tolling Agreement is attached as **Exhibit 2**.

18.     As set forth in the Tolling Agreement, Citibank understood that Dentons would repay the balance of the Term Note, pursuant to the Repayment Schedule attached to the Tolling Agreement.  *See* Ex. 2 at p.2.  Pursuant to the Repayment Schedule, Dentons was expected to remit monthly payments in the amount of $7,823.20 to Citibank, beginning October 1, 2015 and continuing through September 1, 2018.  *See* Ex. 2 at p. 13.

19.     The Tolling Agreement provides that, "[i]n the event of default on the Repayment Schedule, Citi reserves the right to assert that the entire outstanding balance due on the Term Note

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

1    is immediately due and payable." *See* Ex. 2 at p. 3.

2        20.    Under the Tolling Agreement, Citibank reserved the right to collect the full amount

3    of the outstanding amount due under the Term Note, less any payments made.  The Tolling

4    Agreement explicitly provides that it

5             in no way supersedes, amends, waives or modifies Citi's rights in
             the Term Note in any way other than those terms modified as set
6             forth herein.  Rather, Citi is merely extending to Defendant
             additional time to repay the outstanding debt due under the Term
7             Note in an effort to resolve the pending Litigation.  As such, this is a
             settlement with respect to this Litigation only.  Should payments not
8             be made pursuant to the schedule attached hereto as Exhibit "B,"
             Citi reserves the right to assert that Interest shall continue to accrue
9             on the Term Note loan balance at the contractual rate set forth in the
             Term Note, and that Citi is entitled to actual attorney's fees and
10            court costs to enforce the Term Note.

11

12       21.    The Tolling Agreement further provides that, as consideration for dismissing the

13   2015 Lawsuit and forbearing on collecting the entire loan balance and agreeing to the Repayment

14   Schedule, Alford agreed that any applicable statute of limitations for Citibank to enforce its rights

15   under the Term Note or the Tolling Agreement would be tolled until September 18, 2018.

16   Accordingly, the applicable statute of limitations on Citibank's rights to enforce the Term Note

17   began to accrue on September 18, 2018.

18       22.    Dentons issued 12 monthly remittances to Citibank, each in the amount of

19   $7,823.20.  The last of these remittances was received by Citibank in September 2016.  Dentons'

20   failure to make monthly remittances to Citibank after September 2016 is an event of default on the

21   Repayment Schedule, and therefore, the entire outstanding balance due on the Term Note is

22   immediately due and payable.

23       23.    Although Citibank has made demand, Alford has not paid the full amount due on

24   the Term Note.

25       24.    As of February 12, 2019, Alford's total obligation to Citibank under the Term Note

26   is $204,311.39, consisting of principal in the amount $179,933.00 and accrued and unpaid interest

27   in the amount of $24,377.79.

28       25.    Interest on the outstanding principal balance of the debt continues to accrue at the

rate of interest as set forth in the Term Note.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

## CAUSE OF ACTION

## BREACH OF CONTRACT (PROMISSORY NOTE)

26.     Citibank incorporates the allegations in the foregoing paragraphs 1-25 as if fully set forth herein.

27.     On or about April 25, 2013, Citibank and Alford entered into a loan contract, the payment obligation of which is evidenced by the Term Note.  A copy of the Term Note, marked Exhibit 1, is attached to this complaint and incorporated herein by reference.

28.     Citibank has performed all the conditions, covenants, promises and agreements required of it under the terms of the loan contract by having disbursed to Alford the sum of $424,000.00.

29.     Alford has failed, and continues to fail, to perform his part of the contract or to tender such performance.  In particular, Alford has not met its obligation to pay the principal amount, and all interest owing on the principal amount, despite the obligation of Alford to pay the principal amount owed.

30.     Citibank demanded repayment of the full amount due under the Term Note by letter to Alford dated October 15, 2018.  Alford has failed to repay the full amount due.

31.     The Term Note provides that in the event legal action is taken to enforce collection, Alford promises to pay "all costs and expenses . . . including without limitation reasonable attorneys' fees [.]"  *See* Ex. 1 at ¶ 15.

32.     Citibank has employed the law firm of Ballard Spahr, LLP to enforce the Term Note, which has necessitated the filing of this action due to Alford's failure to repay the full amount due under the Term Note.

33.     As of February 12, 2019, Alford's total obligation to Citibank under the Term Note is $204,311.39, consisting of principal in the amount $179,933.00 and accrued and unpaid interest in the amount of $24,377.79.  Interest continues to accrue in accordance with the provisions of the Term Note.  Alford is also obligated under the Term Note to pay the attorneys' fees incurred by Citibank that are associated with the enforcement of the Term Note and the filing of this action.

COMPLAINT

1    WHEREFORE, Citibank prays for judgment against Alford in an amount to be proven at

2  trial not less than $204,311.39, plus pre- and post-judgment interest as allowed by law, costs and

3  disbursements in accordance with the Term Note, attorneys' fees as permitted by the Term Note in

4  an amount to be proven herein, and such other relief as the Court deems just and proper.

5  DATED:  February 15, 2019                    Respectfully submitted,
                                                BALLARD SPAHR LLP
6                                               Kay Fitz-Patrick

7

8                                               By: _____/s/ Kay Fitz-Patrick_____
                                                         Kay Fitz-Patrick

9                                               Attorney for Plaintiff
                                                   CITIBANK, N.A.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400

COMPLAINT

# EXHIBIT 1

**Term Note**
Reset LIBOR Rate (individuals/Lawyers)

**CITIBANK, N.A.**

| | | |
|---|---|---|
| **$424,000.00** | San Francisco, CA | April 25, 2013 |
| (Amount) | (City and State) | (Date) |

(In this Note the words "I", "me", "my" and "mine" mean each and all who sign it. The words "you" and "your" mean Citibank, N.A., or any other owner of this Note.)

| | | |
|---|---|---|
| 1. | **Promise To Pay** | I promise to pay to your order at your office or branch located at **One Sansome Street, 24th Floor, San Francisco, CA  94104** (the "Office"), the principal sum (the "**Loan**") of **Four Hundred Twenty-Four Thousand US Dollars ($424,000.00)**, in accordance with the schedule set forth below in the paragraph headed Repayment Schedule.  I also agree to pay interest on the outstanding principal balance of this Note at the rate per annum equal to the **Reset LIBOR Rate plus the Reset LIBOR Rate Margin (each as defined below)**, from the date of this Note to, but excluding, the business day when this Note is paid in full.  The words "business day" mean a day of the year on which banks are not required or authorized to close in New York City. |
| 2. | **Repayment Schedule** | I promise to repay the Loan in **Five** consecutive **Annual** installments of **Seventy Thousand, Six Hundred Seventy ($70,670.00)** on the **First** day of each **February** commencing **February 01, 2018**, and a final installment of **Seventy Thousand, Six Hundred Fifty ($70,650.00),** which shall be due on **February 01, 2023**. |
| 3. | **Rate of Interest** | "**Reset LIBOR Rate**" means, a daily fluctuating rate of interest per annum, equal for each day to the one-month LIBOR Rate for such such day, or if such day is not a Business Day, the immediately preceding Business Day.<br>  "**Reset LIBOR Rate Margin**" is **plus 2.50%** per annum.<br>  "**LIBOR Rate**" means, for any Interest Period, the rate per annum equal to the British Bankers Association LIBOR Rate ("BBA LIBOR"), as published by Reuters (or another commercially available source providing quotations of BBA LIBOR as designated by the Lender from time to time) at approximately 11:00 a.m. (London time) two Business Days prior to the commencement of such Interest Period, for U.S. dollar deposits (for delivery on the first day of such Interest Period) with a term equivalent to such Interest Period.  If such rate is not available at such time for any reason, then the "LIBOR Rate" for such Interest Period shall be the rate per annum determined by the Lender to be the rate at which U.S. dollar deposits with a term equivalent to such Interest Period would be offered by Citibank, N.A. in London, England to major banks in the London or other offshore interbank market at approximately 11:00 a.m. (London time) two Business Days prior to the commencement of such Interest Period.<br>Notwithstanding the foregoing, any principal balance of this Note which is not paid when due (whether on a scheduled repayment date, by acceleration or otherwise) shall bear interest from the date on which such amount was due to, but excluding, the Business Day when such amount is paid in full, at a rate per annum equal to 4% per annum above the Reset LIBOR Rate. |
| 4. | **Set -up Fee** | Upon signing this Note I shall pay you a set-up fee in the amount of **$0.00** |
| 5. | **Interest Payment** | Interest on the unpaid principal balance of this Note is payable **Monthly** beginning on **June 01, 2013.** |
| 6. | **Prepayment** | I may prepay this Loan in full at any time without penalty. |
| 7. | **Use of Proceeds** | I shall use the proceeds of the Loan for any lawful purpose. |
| 8. | **Financial Statements, Etc.** | I agree to furnish you with my financial statement as well as the financial statement for any and all guarantors of this Note upon your request, each in form acceptable to you.  I understand that you may decide in your discretion not to request any or all of such financial statements, but the absence of such a request does not limit your right to request any or all of such financial statements at any time and from time to time.  I also agree to furnish you with such other financial information (including, without limitation, income verification) concerning me or any guarantor as you may reasonably request, as well as notice of any adverse change in my financial condition. |
| 9. | **Deposits and Right of Setoff** | I understand you have the right, without prior notice to me, to apply the amounts in certain of my deposit accounts with you, if any, to whatever I owe you simply under this Note. |

Amount: $424,000.00
Date: April 25, 2013   New
n0027-ca-libor

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

| 10. Illegality, Unavailability | If you notify me that the introduction of or any change in or in the interpretation of any law or regulation makes it unlawful, or any central bank or other governmental authority asserts that it is unlawful, for you to make or maintain the Loan at the Reset LIBOR Rate, (i) your obligation to make a Reset LIBOR Rate Loan hereunder shall be suspended until you shall notify me that the circumstances causing such suspension no longer exist and (ii) I shall forthwith prepay in full the existing Reset LIBOR Rate Loan together with interest accrued thereon, unless I, within five business days of notice from you, elect to convert such Reset LIBOR Rate Loan to an Alternate Base Rate Loan.  In addition, if you notify me that by reason of circumstances affecting the London interbank market for United States dollar deposits there does not exist adequate and reasonable means for ascertaining the Reset LIBOR Rate, then, on such day, the Reset LIBOR Loan shall automatically convert to an Alternate Base Rate Loan (which I shall be deemed to have accepted) until you shall notify me that the circumstances causing such suspension no longer exist.

**"Alternate Base Rate"** is a fluctuating annual rate of interest in effect from time to time that for any day shall be equal to the highest of: (a) the Base Rate in effect on such day; or (b) the Federal Funds Rate in effect on such day plus 2.0% per annum; or (c) the LIBOR Rate for an Interest Period of one month beginning on such day, or if such day is not a Business Day, the immediately preceding Business Day, plus 2.0% per annum.
<u>Alternate Base Rate Margin</u>" is <u>plus</u> 1.00% per annum.
"<u>Base Rate</u>" is a fluctuating annual rate of interest in effect from time to time that for any day shall be equal to the rate of interest for such day announced publicly by Citibank, N.A. in New York, New York, as Citibank, N.A.'s base rate (which I acknowledge and agree is announced by Citibank, N.A. for reference purposes only and may not represent the lowest or best rate available to any of its customers).
"<u>Federal Funds Rate</u>" is a fluctuating interest rate per annum equal for each day during such period to (i) the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System arranged by Federal funds brokers, as published for such day (or, if such day is not a Business Day, for the preceding Business Day) by the Federal Reserve Bank of New York, or (ii) if such rate is not so published for any day that is a Business Day, the average of the quotations at approximately 11:00 a.m., New York City time, for the day for such transactions received by Citibank, N.A. from three Federal funds brokers of recognized standing selected by it. |
| 11. Default | I will be in default under this Note if any of the following should happen:
a.   I fail to pay any amounts due under this Note or any other of my Obligations to you when due;
b.   I fail to observe any other term or condition of this Note;
c.   I shall cease to be affiliated with the firm or company with which I am currently affiliated with respect to my employment;
d.   I die, become incapacitated or incompetent, or my income is substantially reduced;
e.   Any guarantor of this Note dies, becomes incapacitated or incompetent, or ceases to be affiliated with the firm or company with which he/she is currently affiliated with respect to his/her employment;
f.   Any information, whether oral or written, provided by me or any guarantor in connection with this transaction is false or misleading in any way;
g.   I or any guarantor becomes insolvent or any proceeding in bankruptcy or insolvency is started by or against me or any guarantor;
h.   I or any guarantor takes advantage of any insolvency law;

i.   A receiver or conservator of any property of mine or any guarantor is appointed;
j.   The general nonpayment by me or any guarantor of our respective debts as they become due;
k.   The admission by me or any guarantor of our respective inability to generally pay our debts;
l.   I or any guarantor makes an assignment for the benefit of creditors;
m.   Any property of mine or any guarantor in your possession is attached or if I, any guarantor or any such property becomes subject to court order or other legal process; or
n.   A material adverse change shall occur in my financial condition or the financial condition of any guarantor. |
| 12. Consequences of Default | If I am in default, this Note will, upon notice to me by you, become and be immediately due and payable. Notwithstanding the preceding sentence, if I am in default of part f, g, h or k of the paragraph above headed Default, this Note will become and be immediately due and payable without your having to give me any notice. |
| 13. Waiver; Delay in Enforcement | I specifically waive any legal requirements of presentment for payment, demand, protest, notice of dishonor and notice of protest of this Note.  You can delay enforcing any of your rights without losing them. |

Amount: $424,000.00
Date: April 25, 2013   New
n0027-ca-libor

Page 2 of 4

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

| 14. Applicable Law | I agree that this Note shall be governed by the laws of the State of California. |
|---|---|
| 15. Collection and Enforcement Costs | I agree to pay, on demand, all costs and expenses, if any, in connection with the collection or enforcement of the Obligations (whether through negotiations, legal proceedings or otherwise), including without limitation reasonable attorneys' fees and their disbursements, court costs and your disbursements in connection with the enforcement of your rights under this Note. |
| 16. Changes | The terms of this Note may not be changed unless the change is authorized by you in writing. |
| 17. Heirs, Executors, Etc. | My obligations under this Note will also be binding upon my heirs, executors and administrators. |
| 18. More Than One Signer | If there is more than one signer of this Note, each signer is fully and personally responsible for complying with all its terms and conditions, including the promise to pay the full amount owed under this Note. You may enforce your rights under this Note against each signer separately or against all signers together. This means that any one signer individually may be required to pay all amounts owed under this Note, including any advances made at the request of and to any one of them. A release of any signer from the obligations of this Note will in no way release any other signer from his or her obligations. |
| 19. Transfer of Note and Discharge of Liability | I understand that I may not assign or otherwise transfer any of my rights or obligations under this Note without your prior written consent. You may transfer this Note and deliver to one or more third parties all or any of the property then held by you as collateral under this Note, and the transferee(s) shall thereupon become vested with all the powers and rights given to you with respect to this Note; and you shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter, but you shall retain all rights and powers given in this Note with respect to property not so transferred. |
| 20. Pledge to the Federal Reserve | You may at any time pledge or assign a security interest in all or any portion of your rights under this Note to secure your obligations, including any pledge or assignment to secure obligations to a Federal Reserve Bank; provided that no such pledge or assignment shall release you from any of your obligations under this Note or substitute any such pledgee or assignee for you as a party to this Note. |
| 21. Submission to Jurisdiction | Without limiting your right to bring any action or proceeding against me or against my property arising out of or relating to any obligation under this Note (an "Action") in the courts of other jurisdiction(s), I irrevocably submit to the jurisdiction of any California State or federal court sitting in San Francisco, CA, and I irrevocably agree that any Action may be heard and determined in such California State court or in such federal court. I irrevocably waive to the fullest extent that I may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction. I irrevocably agree that the summons and complaint or any other process in any Action in any jurisdiction may be served by mailing to any of the addresses set forth below or by hand delivery to a person of suitable age and discretion at any of the addresses set forth below. Such service will be complete on the date such process is so mailed or delivered. I may also be served in any other manner permitted by law. |
| 22. WAIVER OF JURY TRAIL | BOTH YOU AND I IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OBLIGATION OR THIS NOTE. |

Name of Borrower: Fletcher Carlton Alford       Name of Borrower: **XXXX**

Signature of Borrower: _____       Signature of Borrower: _____

Address: _____       Address: _____

**El Cerrito, CA 94530**       **El Cerrito, CA 94530**

Amount: $424,000.00
Date: April 25, 2013  New
n0027-ca-libor

Page 3 of 4

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

# Guaranty

(In this Guaranty the words "I", "me" and "my" mean each and all who sign it.  The words "you" and "your" mean Citibank, N.A. or any other owner of this Note.)

| 1. | Obligations Guaranteed | By signing this Guaranty, I guarantee to you that all of the obligations of the Borrower(s) under this Note will be paid when due, no matter what may happen.  This Guaranty covers every kind of obligation of the Borrower(s) under this Note, including interest and any expense to you in collecting your debt from the Borrower(s) under this Note. In this Guaranty, all the obligations of the Borrower(s) under this Note of whatever kind are together called the "Obligations." |
|---|---|---|
| 2. | Expenses of Enforcement | I agree to pay, on demand, all costs and expenses, if any, you may have in collecting money from me or in enforcing my obligations under this Guaranty, including without limitation your reasonable attorneys' fees and their disbursements, court costs and your disbursements in connection with the enforcement of your rights under this Guaranty.  These amounts are in addition to the Obligations. |
| 3. | Continuing Guaranty, Etc. | This is a continuing guaranty and remains in full force and effect until the final payment in full of all Obligations following the maturity of this Note.  I agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part of any payment, of any Obligation is rescinded or must otherwise be restored or returned by you upon the insolvency or bankruptcy of the Borrower(s), or for whatever other reason, all as if such payment had not been made.  I irrevocably waive any rights I may have against the Borrower(s) by reason of subrogation or otherwise resulting from payments made by me of any of the Obligations. |
| 4. | Events Not Affecting the Guaranty | I agree that my liability under this Guaranty shall not be limited or canceled because: <br> a) Any Obligation cannot be enforced against the Borrower(s) or any of them; <br> b) You agree to changes in the terms of any Obligation, such as extending the time for repayment; <br> c) Any collateral for the Obligations is exchanged or released, or not established or perfected; <br> d) Any guarantor is released of such guarantor's liability in respect of any of the Obligations: <br> e) A law, regulation or order of any public authority affects your rights in respect of any of the Obligations; or <br> f) Anything else happens which may affect your rights against the Borrower(s) or any of them or might release any guarantor. |
| 5. | No Notice | You do not have to give me or the Borrower(s) any notice that any Obligation has not been paid when due. |
| 6. | Other Sources of Payment | You may require me to pay any Obligation without first seeking payment from or making any attempt to enforce its payment by the Borrower(s) or any other guarantor, or first trying to make use of any collateral. |
| 7. | Delay in Enforcement | You can delay enforcing any of your rights under the Obligations or this Guaranty without losing any of your rights to demand payment from me. |
| 8. | More Than One Signer | If there is more than one signer of this Guaranty, each signer is fully and personally liable under this Guaranty.  You may enforce your rights under this Guaranty against each signer separately or against all signers together.  This means that any one signer individually may be required to pay all amounts payable under this Guaranty. |
| 9. | Heirs, Executors, Etc. | The terms of this Guaranty may not be changed unless the change is authorized by you in writing.  My obligations under this Guaranty will also be binding upon my heirs, executors and administrators. |
| 10. | Applicable Law | I agree that this Guaranty shall be governed by the laws of the State of California. |
| 11. | Submission to Jurisdiction | Without limiting your right to bring any action or proceeding against me or against my property arising out of or relating to any obligation under this Guaranty (an "Action") in the courts of other jurisdiction(s), I irrevocably submit to the jurisdiction of any California State or federal court sitting in San Francisco, CA, and I irrevocably agree that any Action may be heard and determined in such California State court or in such federal court. I irrevocably waive to the fullest extent that I may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction.  I irrevocably agree that the summons and complaint or any other process in any Action in any jurisdiction may be served by mailing to any of the addresses set forth below or by hand delivery to a person of suitable age and discretion at any of the addresses set forth below.  Such service will be complete on the date such process is so mailed and delivered.  I may also be served in any other manner permitted by law. |
| 12. | WAIVER OF JURY TRAIL | **BOTH YOU AND I IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OBLIGATION OR THIS GUARANTY.** |

Date:_____

Name of Guarantor: **N/A**

Signature of Guarantor:_____

Address:


Date:_____

Name of Guarantor: **N/A**

Signature of Guarantor:_____

Address:

Amount: $424,000.00
Date: April 25, 2013   New
n0027-ca-libor

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

Dentons US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606

Attention: Edward R. Tinson - CFO

Gentlemen:

I am writing to inform you of my borrowing from Citibank, N.A. (the "Lender")
evidenced by a Term Note - Variable Rate (the "Note") in the principal amount of
$424,000.00, which I have signed on or about this date. The purpose of the loan
evidenced by the Note is to finance all or a portion of my required capital contribution to
Dentons US LLP (the "Firm"), net of paid in capital.

I hereby irrevocably instruct the Firm to:
1.  notify the Lender thirty days prior to any disbursement of my capital account,
2.  pay directly to the Lender rather than to me the lesser of the amount of the capital
    account to be disbursed or the unpaid principal balance of the Note plus accrued
    interest;
3.  notify the Lender if the Firm becomes aware of any encumbrance, lien or judgment
    affecting me or my capital account with the Firm and notify the Lender of any change
    or amendment to the Firm partnership agreement permitting any such encumbrance,
    lien or judgment;
4.  provide information on the balance in my capital account at the Firm, my income
    from the Firm, and my status at the Firm, when requested by the Lender; and
5.  acknowledge and forward this letter to The Citi Private Bank, Citibank, N.A., One
    Sansome Street, 24th Floor, San Francisco, CA 94104. Attention: John Mitchell.

These instructions to the Firm shall remain in effect until you have been notified in
writing by an officer of Citibank, N.A. that the indebtedness has been repaid in full.

Very truly yours,                          Consented by,


Fletcher Carlton Alford                    _____
                                           Spouse (if applicable)

Acknowledged
Dentons US LLP

By:    Edward R. Tinson - CFO

  Signature:

     Date:    4/30/13

Dentons US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606

Attention:  Edward R. Tinson - CFO

Gentlemen:

I am writing to inform you of my borrowing from Citibank, N.A. (the "Lender")
evidenced by a Term Note - Variable Rate (the "Note") in the principal amount of
$424,000.00, which I have signed on or about this date.  The purpose of the loan
evidenced by the Note is to finance all or a portion of my required capital contribution to
Dentons US LLP (the "Firm"), net of paid in capital.

I hereby irrevocably instruct the Firm to:
1.  notify the Lender thirty days prior to any disbursement of my capital account,
2.  pay directly to the Lender rather than to me the lesser of the amount of the capital
    account to be disbursed or the unpaid principal balance of the Note plus accrued
    interest;
3.  notify the Lender if the Firm becomes aware of any encumbrance, lien or judgment
    affecting me or my capital account with the Firm and notify the Lender of any change
    or amendment to the Firm partnership agreement permitting any such encumbrance,
    lien or judgment;
4.  provide information on the balance in my capital account at the Firm, my income
    from the Firm, and my status at the Firm, when requested by the Lender; and
5.  acknowledge and forward this letter to The Citi Private Bank, Citibank, N.A., One
    Sansome Street, 24th Floor, San Francisco, CA 94104.  Attention: John Mitchell.

These instructions to the Firm shall remain in effect until you have been notified in
writing by an officer of Citibank, N.A. that the indebtedness has been repaid in full.

Very truly yours,                               Consented by,


Fletcher Carlton Alford                         _____
                                                Spouse (if applicable)

Acknowledged
Dentons US LLP

By:    Edward R. Tinson - CFO

    Signature:    _____

        Date:    _____

## <u>Wire Transfer Instructions</u>
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
Phone (312) 876-8000

All U.S. Dollar wire transfers of payments to the firm should be sent to:

Citibank, N.A.
Chicago, IL 60606

ABA Transit # 271070801
Account # ████1693
Account Name: DENTONS US LLP

The following information should also be provided on the wire transfer advice:

a.    Partner Name: Fletcher Alford

b.    RE: Capital Funds

c.    Dollar Amount $424,000

Please send an email notifying Robert Benson and Nanette Smith of the Capital loan fundings.

robert.benson@snrdenton.com   and   Nanette.smith@snrdenton.com

\* Fund loan proceeds into checking account ████████
& wire them to the firm's account listed above.

X ~~~~~~~~~~~~~~~        ~~~~

# EXHIBIT 2

# SETTLEMENT AND TOLLING OF STATUTE OF LIMITATIONS AGREEMENT

This Settlement and Tolling of Statute of Limitations Agreement ("Agreement") is made and entered into as of the date all signatories below have executed the Agreement (the "Effective Date") by CITI BANK, N.A. ('Plaintiff" or "Citi") and FLETCHER CARLTON ALFORD ("Defendant"). Citi and Defendant are collectively the "Parties," and each individually is a "Party."

## RECITALS

This Agreement is entered into with reference to the following facts and recitals which are true to the best of the Parties' knowledge and belief, and are made part of this Agreement:

WHEREAS, on or around April 25, 2013, Plaintiff extended credit to Defendant in the amount of $424,000.00, which terms of repayment are embodied in the Term Note . A true and correct copy of the Term Note is attached hereto as Exhibit "A";

WHEREAS, pursuant to the terms of the Term Note, Defendant agreed that he would pay the principal sum of $424,000.00, plus interest and other charges set forth therein, in annual installments until paid in full;

WHEREAS, at the time of the making of the Term Note, Defendant was a newly-admitted proprietary partner of the law firm of Dentons LLP, and the proceeds from the Term Note were paid to Dentons LLP to satisfy Defendant's capital contribution requirements to that firm.

WHEREAS, subsequent to the execution of the Term Note, Defendant's capital contribution obligation to Dentons LLP was reduced, and in connection therewith, Dentons LLP at that time repaid to Citi a portion of the balance of the Term Note corresponding with Defendant's reduced capital contribution obligation, such that the amount of outstanding principal on the Term Note is currently $281,000.

WHEREAS, Citi contends that Defendant has defaulted under the terms of the Term Note by failing to pay the balance of principal and interest when due. Defendant left his prior employer, Dentons U.S. LLP, in or around September 2014.  The Term Note payments are due for the May l, 2015 to September 1, 2015 interest payments;

WHEREAS, due to Defendant's alleged failure to bring the Term Note payments current, Plaintiff was forced to retain the law offices of Wright, Finlay & Zak, LLP, duly licensed attorneys, to file suit to enforce the terms and provisions of the Term Note as a result of Defendant's alleged default thereunder (the "Litigation");

WHEREAS, in the Term Note, it is provided that Defendant agrees to pay all expenses incurred in the enforcement of the Term Note, including without limitation, reasonable attorney's fees and costs;

WHEREAS, Plaintiff contends that the entire balance due under the Term Note plus interest, costs, and reasonable attorney's fees are due and owing. Defendant maintains that he has potential counter-claims against his former employer, Dentons U.S. LLP. As such, the Parties agree that it is in their mutual interests to avoid the uncertainty and expense of this Litigation by reaching a settlement and accommodation of the certain matters encompassed herein, without any admission of law or fact;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties covenant and agree as follows:

**TERMS**

1   SETTLEMENT AGREEMENT PROVISIONS

    **A.**    **Agreement Execution.** Citi acknowledges receipt of a cashier's check in the amount of $3,171.75 to Citi's Counsel at: Wright, Finlay, & Zak, LLP, Attn: Bradford E. Klein, Esq., 4665 MacArthur Court, Ste. 200, Newport Beach, CA 92660. This amount represents outstanding interest owed on the Term Note from the period of May 1, 2015 to September 1, 2015.

    **B.**    **Payment Schedule.** Dentons LLP has represented that it will repay to Citi the balance of the Term Note pursuant to the Repayment Schedule attached hereto as **Exhibit "B,"** which is incorporated herein by reference ("Repayment Schedule").

    **C.**    **Dismissal without Prejudice.** Within five (5) business days of negotiating the cashier's check referenced in Paragraph "A," Plaintiff shall file a Request for Dismissal without Prejudice of the Litigation.

    **D.**    **Tolling of Statute of Limitations.** As consideration for dismissing the Litigation, forbearing on collecting the entire loan balance and agreeing to the Repayment Schedule, Defendant agrees that any applicable statute of limitations for Citi to enforce the terms of the Agreement is tolled until **September 18, 2018,** and from that date, and only then, will the applicable statute(s) of limitations on Citi's rights begin to accrue.

    **E.**    **Reservation of Rights of Citi. Citi** reserves the right to collect the full amount of the outstanding amount due under the Term Note, less any payments made. This Agreement and entering into the Repayment Schedule in no way supersedes, amends, waives or modifies Citi's rights in the Term Note in any way other than those terms modified as set forth herein. Rather, Citi is merely extending to

2

Defendant additional time to repay the outstanding debt due under the Term Note in an effort to resolve the pending Litigation. As such, this is a settlement with respect to this Litigation only. Should payments not be made pursuant to the scheduled attached hereto as Exhibit "B," Citi reserves the right to assert that Interest shall continue to accrue on the Term Note loan balance at the contractual rate set forth in the Term Note, and that Citi is entitled to actual attorney's fees and court costs to enforce the Term Note.

F.  **Default.** In the event of default on the Repayment Schedule, Citi reserves the right to assert that the entire outstanding balance due on the Term Note is immediately due and payable. For the purposes of computing the amount remaining due, all payments made under the Repayment Schedule shall be considered to have been applied first to accrued interest, costs and attorneys' fees through the date of each payment. The remainder, if any, shall be considered to have been applied to reduce the principal balance owing. The provision that time is of the essence with respect to the payment due dates as set forth in the Repayment Schedule is a material provision of this Agreement, without which said Agreement would not have been entered into by the Plaintiff.

2.  **ADDITIONAL TERMS**

A.  **Adequate Consideration.** The consideration received in connection with this Agreement is fair, adequate and substantial and consists only of the terms set forth in this Agreement.

B.  **Further Assurances.** Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreement.

C.  **Waiver.** The failure of Plaintiff to demand from Defendant performance of any act under the Agreement shall not be construed as a waiver of Plaintiffs right to demand, at any subsequent time, such performance. Plaintiff is not waiving its right to enforce the terms of the Agreement.

D.  **Choice of Law.** This Agreement shall be construed in accordance with and all disputes hereunder shall be controlled by the laws of the State of California without regard to California's choice of law rules.

E.  **No Interpretation of Captions or Headings.** The captions and headings within this Settlement Agreement are for ease of reference only and are not intended to create any substantive meaning or to modify the terms and clauses either following them or contained in any other provision of this Settlement Agreement.

F.  **Severability.** If any provision of the Agreement or the application thereof is held invalid by a court, arbitrator or government agency of competent jurisdiction, the Parties agree that such a determination of invalidity shall not affect other

3

provisions or applications of the Agreement which can be given effect without the invalid provisions and thus shall remain in full force and effect or application.

G.   **Neutral Interpretation and Counterparts.**  The Parties shall be deemed to have cooperated in the drafting and preparation of this Agreement. Hence, any construction to be made of this Agreement shall not be construed against any Party.  This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original.  All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

H.   **Integration / Single Agreement.**  This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of the Agreement are contractual and not merely recitals. There is no other agreement, written or oral, expressed or implied between the Parties with respect to the subject matter of this Agreement and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them or upon which they have relied in any way.  The terms and conditions of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreement.  This provision does not apply either to any other business relationship between the Parties (*e.g.,* a credit card, investment or bank account) not related to the subject matter of the release with this Agreement.

I.   **Amendments to the Agreement.**  This Agreement shall not be altered, amended or modified by oral representation made before or after the execution of this Agreement.  All amendments or changes of any kind must be in writing, executed by all Parties.

J.   **Advice of Counsel.**  Each Party to this Agreement acknowledges that it has had the benefit of advice of competent legal counsel or the opportunity to retain such counsel with respect to its decision to enter into this Agreement.  The individuals whose signatures are affixed to this Agreement in a personal or representative capacity represent that they are competent to enter into this Agreement and are doing so freely and without coercion by any other Party or non-party hereto.

//

//

//

///

4

K.    **Successors.**  This  Agreement shall inure to the benefit of the respective heirs, successors, and assigns of the Parties, and each and every one of the Releasees shall be deemed to be intended third-party beneficiaries of this Agreement.

IN WITNESS WHEREOF, the Parties hereto evidence their agreement as a sealed instrument and have executed this Agreement as of the day and year first below written.


Dated: ___10/13___ , 2015                    _____
                                              Fletcher Carlton ALFORD


Dated: ___10/28___ , 2015          CITI BANK, N.A.

                                   By:  _____

                                   Title:  Peter T. Votey, Director, SCO
                                           Invest Lagacy & CITI Law Firm Group
                                           153 E  53rd/23rd Flr/NYC
                                           212 559-1123

**Term Note**
Reset LIBOR Rate (individuals/Lawyers)

*CITIBANK, N.A.*

| $424,000.00 | San Francisco, CA | April 25, 2013 |
|---|---|---|
| (Amount) | (City and State) | (Date) |

(In this Note the words "I", "me", "my" and "mine" mean each and all who sign it. The words "you" and "your" mean Citibank, N.A., or any other owner of this Note.)

| | | |
|---|---|---|
| 1. | Promise To Pay | I promise to pay to your order at your office or branch located at **One Sansome Street, 24th Floor, San Francisco, CA 94104** (the "Office"), the principal sum (the "**Loan**") of **Four Hundred Twenty-Four Thousand US Dollars ($424,000.00)**, in accordance with the schedule set forth below in the paragraph headed Repayment Schedule. I also agree to pay simple interest on the outstanding principal balance of this Note at the rate per annum equal to the **Reset LIBOR Rate plus the Reset LIBOR Rate Margin (each as defined below)**, from the date of this Note to, but excluding, the business day when this Note is paid in full. The words "business day" mean a day of the year on which banks are not required or authorized to close in New York City. |
| 2. | Repayment Schedule | I promise to repay the Loan in **Five consecutive Annual** installments of **Seventy Thousand, Six Hundred Seventy ($70,670.00)** on the First day of each **February** commencing **February 01, 2018**, and a final installment of **Seventy Thousand, Six Hundred Fifty ($70,650.00)**, which shall be due on **February 01, 2023**. |
| 3. | Rate of Interest | "**Reset LIBOR Rate**" means, a daily fluctuating rate of interest per annum, equal for each day to the one-month LIBOR Rate for such such day, or if such day is not a Business Day, the immediately preceding Business Day. |
| | | "**Reset LIBOR Rate Margin**" is **plus 2.50%** per annum. |
| | | "**LIBOR Rate**" means, for any Interest Period, the rate per annum equal to the British Bankers Association LIBOR Rate ("BBA LIBOR"), as published by Reuters (or another commercially available source providing quotations of BBA LIBOR as designated by the Lender from time to time) at approximately 11:00 a.m. (London time) two Business Days prior to the commencement of such Interest Period, for U.S. dollar deposits (for delivery on the first day of such Interest Period) with a term equivalent to such Interest Period. If such rate is not available at such time for any reason, then the "LIBOR Rate" for such Interest Period shall be the rate per annum determined by the Lender to be the rate at which U.S. dollar deposits with a term equivalent to such Interest Period would be offered by Citibank, N.A. in London, England to major banks in the London or other offshore interbank market at approximately 11:00 a.m. (London time) two Business Days prior to the commencement of such Interest Period. |
| | | Notwithstanding the foregoing, any principal balance of this Note which is not paid when due (whether on a scheduled repayment date, by acceleration or otherwise) shall bear interest from the date on which such amount was due to, but excluding, the Business Day when such amount is paid in full, at a rate per annum equal to 4% per annum above the Reset LIBOR Rate. |
| 4. | Set -up Fee | Upon signing this Note I shall pay you a set-up fee in the amount of **$0.00** |
| 5. | Interest Payment | Interest on the unpaid principal balance of this Note is payable **Monthly** beginning on **June 01, 2013.** |
| 6. | Prepayment | I may prepay this Loan in full at any time without penalty. |
| 7. | Use of Proceeds | I shall use the proceeds of the Loan for any lawful purpose. |
| 8. | Financial Statements, Etc. | I agree to furnish you with my financial statement as well as the financial statement for any and all guarantors of this Note upon your request, each in form acceptable to you. I understand that you may decide in your discretion not to request any or all of such financial statements, but the absence of such a request does not limit your right to request any or all of such financial statements at any time and from time to time. I also agree to furnish you with such other financial information (including, without limitation, income verification) concerning me or any guarantor as you may reasonably request, as well as notice of any adverse change in my financial condition. |
| 9. | Deposits and Right of Setoff | I understand you have the right, without prior notice to me, to apply the amounts in certain of my deposit accounts with you, if any, to whatever I owe you under this Note. |

Amount: $424,000.00
Date: April 25, 2013  New
n0027-ca-libor

Page 1 of 4

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

| | |
|---|---|
| **10. Illegality, Unavailability** | If you notify me that the introduction of or any change in or in the interpretation of any law or regulation makes it unlawful, or any central bank or other governmental authority asserts that it is unlawful, for you to make or maintain the Loan at the Reset LIBOR Rate,  (i) your obligation to make a Reset LIBOR Rate Loan hereunder shall be suspended until you shall notify me that the circumstances causing such suspension no longer exist and (ii) I shall forthwith prepay in full the existing Reset LIBOR Rate Loan together with interest accrued thereon, unless I, within five business days of notice from you, elect to convert such Reset LIBOR Rate Loan to an Alternate Base Rate Loan.  In addition, if you notify me that by reason of circumstances affecting the London interbank market for United States dollar deposits there does not exist adequate and reasonable means for ascertaining the Reset LIBOR Rate, then, on such day, the Reset LIBOR Loan shall automatically convert to an Alternate Base Rate Loan (which I shall be deemed to have accepted) until you shall notify me that the circumstances causing such suspension no longer exist. |

"**Alternate Base Rate**" is a fluctuating annual rate of interest in effect from time to time that for any day shall be equal to the highest of: (a) the Base Rate in effect on such day; or (b) the Federal Funds Rate in effect on such day plus 2.0% per annum; or (c) the LIBOR Rate for an Interest Period of one month beginning on such day, or if such day is not a Business Day, the immediately preceding Business Day, plus 2.0% per annum.
**Alternate Base Rate Margin**" is **plus** 1.00% per annum.
"Base Rate" is a fluctuating annual rate of interest in effect from time to time that for any day shall be equal to the rate of interest for such day announced publicly by Citibank, N.A. in New York, New York, as Citibank, N.A.'s base rate (which I acknowledge and agree is announced by Citibank, N.A. for reference purposes only and may not represent the lowest or best rate available to any of its customers).
"Federal Funds Rate" is a fluctuating interest rate per annum equal for each day during such period to (i) the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System arranged by Federal funds brokers, as published for such day (or, if such day is not a Business Day, for the preceding Business Day) by the Federal Reserve Bank of New York, or (ii) if such rate is not so published for any day that is a Business Day, the average of the quotations at approximately 11:00 a.m., New York City time, for the day for such transactions received by Citibank, N.A. from three Federal funds brokers of recognized standing selected by it.

| | |
|---|---|
| **11. Default** | I will be in default under this Note if any of the following should happen: |

    a.   I fail to pay any amounts due under this Note or any other of my Obligations to you when due;
    b.   I fail to observe any other term or condition of this Note;
    c.   I shall cease to be affiliated with the firm or company with which I am currently affiliated with respect to my employment;
    d.   I die, become incapacitated or incompetent, or my income is substantially reduced;
    e.   Any guarantor of this Note dies, becomes incapacitated or incompetent, or ceases to be affiliated with the firm or company with which he/she is currently affiliated with respect to his/her employment;
    f.   Any information, whether oral or written, provided by me or any guarantor in connection with this transaction is false or misleading in any way;
    g.   I or any guarantor becomes insolvent or any proceeding in bankruptcy or insolvency is started by or against me or any guarantor;
    h.   I or any guarantor takes advantage of any insolvency law;

    i.   A receiver or conservator of any property of mine or any guarantor is appointed;
    j.   The general nonpayment by me or any guarantor of our respective debts as they become due;
    k.   The admission by me or any guarantor of our respective inability to generally pay our debts;
    l.   I or any guarantor makes an assignment for the benefit of creditors;
    m.   Any property of mine or any guarantor in your possession is attached or if I, any guarantor or any such property becomes subject to court order or other legal process; or
    n.   A material adverse change shall occur in my financial condition or the financial condition of any guarantor.

| | |
|---|---|
| **12. Consequences of Default** | If I am in default, this Note will, upon notice to me by you, become and be immediately due and payable. Notwithstanding the preceding sentence, if I am in default of part f, g, h or k of the paragraph above headed Default, this Note will become and be immediately due and payable without your having to give me any notice. |
| **13. Waiver; Delay in Enforcement** | I specifically waive any legal requirements of presentment for payment, demand, protest, notice of dishonor and notice of protest of this Note.  You can delay enforcing any of your rights without losing them. |

Amount: $424,000.00
Date: April 25, 2013  New
n0027-ca-libor

Page 2 of 4

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

| | | |
|---|---|---|
| 14. | Applicable Law | I agree that this Note shall be governed by the laws of the State of California. |
| 15. | Collection and Enforcement Costs | I agree to pay, on demand, all costs and expenses, if any, in connection with the collection or enforcement of the Obligations (whether through negotiations, legal proceedings or otherwise), including without limitation reasonable attorneys' fees and their disbursements, court costs and your disbursements in connection with the enforcement of your rights under this Note. |
| 16. | Changes | The terms of this Note may not be changed unless the change is authorized by you in writing. |
| 17. | Heirs, Executors, Etc. | My obligations under this Note will also be binding upon my heirs, executors and administrators. |
| 18. | More Than One Signer | If there is more than one signer of this Note, each signer is fully and personally responsible for complying with all its terms and conditions, including the promise to pay the full amount owed under this Note. You may enforce your rights under this Note against each signer separately or against all signers together. This means that any one signer individually may be required to pay all amounts owed under this Note, including any advances made at the request of and to any one of them. A release of any signer from the obligations of this Note will in no way release any other signer from his or her obligations. |
| 19. | Transfer of Note and Discharge of Liability | I understand that I may not assign or otherwise transfer any of my rights or obligations under this Note without your prior written consent. You may transfer this Note and deliver to one or more third parties all or any of the property then held by you as collateral under this Note, and the transferee(s) shall thereupon become vested with all the powers and rights given to you with respect to this Note; and you shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter, but you shall retain all rights and powers given in this Note with respect to property not so transferred. |
| 20. | Pledge to the Federal Reserve | You may at any time pledge or assign a security interest in all or any portion of your rights under this Note to secure your obligations, including any pledge or assignment to secure obligations to a Federal Reserve Bank; provided that no such pledge or assignment shall release you from any of your obligations under this Note or substitute any such pledgee or assignee for you as a party to this Note. |
| 21. | Submission to Jurisdiction | Without limiting your right to bring any action or proceeding against me or against my property arising out of or relating to any obligation under this Note (an "Action") in the courts of other jurisdiction(s), I irrevocably submit to the jurisdiction of any California State or federal court sitting in San Francisco, CA, and I irrevocably agree that any Action may be heard and determined in such California State court or in such federal court. I irrevocably waive to the fullest extent that I may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction. I irrevocably agree that the summons and complaint or any other process in any Action in any jurisdiction may be served by mailing to any of the addresses set forth below or by hand delivery to a person of suitable age and discretion at any of the addresses set forth below. Such service will be complete on the date such process is so mailed or delivered. I may also be served in any other manner permitted by law. |
| 22. | WAIVER OF JURY TRAIL | BOTH YOU AND I IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OBLIGATION OR THIS NOTE. |

Name of Borrower: **Fletcher Carlton Alford**

Signature of Borrower: _____

Address: ▮▮▮▮▮▮▮▮▮▮▮
**El Cerrito, CA 94530**

Name of Borrower: **XXXX**

Signature of Borrower: _____

Address: ▮▮▮▮▮▮▮▮▮
**El Cerrito, CA 94530**

Amount: $424,000.00
Date: April 25, 2013  New
n0027-ca-libor

Page 3 of 4

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

# Guaranty

(In this Guaranty the words "I", "me" and "my" mean each and all who sign it. The words "you" and "your" mean Citibank, N.A. or any other owner of this Note.)

| 1. | Obligations Guaranteed | By signing this Guaranty, I guarantee to you that all of the obligations of the Borrower(s) under this Note will be paid when due, no matter what may happen. This Guaranty covers every kind of obligation of the Borrower(s) under this Note, including interest and any expense to you in collecting your debt from the Borrower(s) under this Note. In this Guaranty, all the obligations of the Borrower(s) under this Note of whatever kind are together called the "Obligations." |
|---|---|---|
| 2. | Expenses of Enforcement | I agree to pay, on demand, all costs and expenses, if any, you may have in collecting money from me or in enforcing my obligations under this Guaranty, including without limitation your reasonable attorneys' fees and their disbursements, court costs and your disbursements in connection with the enforcement of your rights under this Guaranty. These amounts are in addition to the Obligations. |
| 3. | Continuing Guaranty, Etc. | This is a continuing guaranty and remains in full force and effect until the final payment in full of all Obligations following the maturity of this Note. I agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part of any payment, of any Obligation is rescinded or must otherwise be restored or returned by you upon the insolvency or bankruptcy of the Borrower(s), or for whatever other reason, all as if such payment had not been made. I irrevocably waive any rights I may have against the Borrower(s) by reason of subrogation or otherwise resulting from payments made by me of any of the Obligations. |
| 4. | Events Not Affecting the Guaranty | I agree that my liability under this Guaranty shall not be limited or canceled because:<br>a) Any Obligation cannot be enforced against the Borrower(s) or any of them;<br>b) You agree to changes in the terms of any Obligation, such as extending the time for repayment;<br>c) Any collateral for the Obligations is exchanged or released, or not established or perfected;<br>d) Any guarantor is released of such guarantor's liability in respect of any of the Obligations;<br>e) A law, regulation or order of any public authority affects your rights in respect of any of the Obligations; or<br>f) Anything else happens which may affect your rights against the Borrower(s) or any of them or might release any guarantor. |
| 5. | No Notice | You do not have to give me or the Borrower(s) any notice that any Obligation has not been paid when due. |
| 6. | Other Sources of Payment | You may require me to pay any Obligation without first seeking payment from or making any attempt to enforce its payment by the Borrower(s) or any other guarantor, or first trying to make use of any collateral. |
| 7. | Delay in Enforcement | You can delay enforcing any of your rights under the Obligations or this Guaranty without losing any of your rights to demand payment from me. |
| 8. | More Than One Signer | If there is more than one signer of this Guaranty, each signer is fully and personally liable under this Guaranty. You may enforce your rights under this Guaranty against each signer separately or against all signers together. This means that any one signer individually may be required to pay all amounts payable under this Guaranty. |
| 9. | Heirs, Executors, Etc. | The terms of this Guaranty may not be changed unless the change is authorized by you in writing. My obligations under this Guaranty will also be binding upon my heirs, executors and administrators. |
| 10. | Applicable Law | I agree that this Guaranty shall be governed by the laws of the State of California. |
| 11. | Submission to Jurisdiction | Without limiting your right to bring any action or proceeding against me or against my property arising out of or relating to any obligation under this Guaranty (an "Action") in the courts of other jurisdiction(s), I irrevocably submit to the jurisdiction of any California State or federal court sitting in San Francisco, CA, and I irrevocably agree that any Action may be heard and determined in such California State court or in such federal court. I irrevocably waive to the fullest extent that I may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction. I irrevocably agree that the summons and complaint or any other process in any Action in any jurisdiction may be served by mailing to any of the addresses set forth below or by hand delivery to a person of suitable age and discretion at any of the addresses set forth below. Such service will be complete on the date such process is so mailed and delivered. I may also be served in any other manner permitted by law. |
| 12. | WAIVER OF JURY TRAIL | **BOTH YOU AND I IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OBLIGATION OR THIS GUARANTY.** |

Date:_____     Date:_____

Name of Guarantor: **N/A**     Name of Guarantor:**N/A**

Signature of Guarantor:_____     Signature of Guarantor:_____

Address:     Address:

Amount: $424,000.00
Date: April 25, 2013  New
n0027-ca-libor

Page 4 of 4

Borrower(s): Fletcher Carlton Alford/XXXX
Guarantor(s): N/A/N/A

Dentons US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606

Attention: Edward R. Tinson - CFO

Gentlemen:

I am writing to inform you of my borrowing from Citibank, N.A. (the "Lender")
evidenced by a Term Note - Variable Rate (the "Note") in the principal amount of
$424,000.00, which I have signed on or about this date. The purpose of the loan
evidenced by the Note is to finance all or a portion of my required capital contribution to
Dentons US LLP (the "Firm"), net of paid in capital.

I hereby irrevocably instruct the Firm to:
1.  notify the Lender thirty days prior to any disbursement of my capital account,
2.  pay directly to the Lender rather than to me the lesser of the amount of the capital
    account to be disbursed or the unpaid principal balance of the Note plus accrued
    interest;
3.  notify the Lender if the Firm becomes aware of any encumbrance, lien or judgment
    affecting me or my capital account with the Firm and notify the Lender of any change
    or amendment to the Firm partnership agreement permitting any such encumbrance,
    lien or judgment;
4.  provide information on the balance in my capital account at the Firm, my income
    from the Firm, and my status at the Firm, when requested by the Lender; and
5.  acknowledge and forward this letter to The Citi Private Bank, Citibank, N.A., One
    Sansome Street, 24th Floor, San Francisco, CA 94104. Attention: John Mitchell.

These instructions to the Firm shall remain in effect until you have been notified in
writing by an officer of Citibank, N.A. that the indebtedness has been repaid in full.

Very truly yours,                          Consented by,


_____                  _____
Fletcher Carlton Alford                    Spouse (if applicable)

Acknowledged
Dentons US LLP

By:    Edward R. Tinson - CFO

Signature: _____

Date: _____4/30/15_____

Dentons US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL 60606

Attention:  Edward R. Tinson - CFO

Gentlemen:

I am writing to inform you of my borrowing from Citibank, N.A. (the "Lender")
evidenced by a Term Note - Variable Rate (the "Note") in the principal amount of
$424,000.00, which I have signed on or about this date.  The purpose of the loan
evidenced by the Note is to finance all or a portion of my required capital contribution to
Dentons US LLP (the "Firm"), net of paid in capital.

I hereby irrevocably instruct the Firm to:
1. notify the Lender thirty days prior to any disbursement of my capital account,
2. pay directly to the Lender rather than to me the lesser of the amount of the capital
   account to be disbursed or the unpaid principal balance of the Note plus accrued
   interest;
3. notify the Lender if the Firm becomes aware of any encumbrance, lien or judgment
   affecting me or my capital account with the Firm and notify the Lender of any change
   or amendment to the Firm partnership agreement permitting any such encumbrance,
   lien or judgment;
4. provide information on the balance in my capital account at the Firm, my income
   from the Firm, and my status at the Firm, when requested by the Lender; and
5. acknowledge and forward this letter to The Citi Private Bank, Citibank, N.A., One
   Sansome Street, 24th Floor, San Francisco,  CA  94104.  Attention: John Mitchell.

These instructions to the Firm shall remain in effect until you have been notified in
writing by an officer of Citibank, N.A. that the indebtedness has been repaid in full.

Very truly yours,                                    Consented by,


_____                              _____
Fletcher Carlton Alford                              Spouse (if applicable)

Acknowledged
Dentons US LLP

By:    Edward R. Tinson - CFO

  Signature:    _____

    Date:       _____

**<u>Wire Transfer Instructions</u>**
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
Phone (312) 876-8000

All U.S. Dollar wire transfers of payments to the firm should be sent to:

Citibank, N.A.
Chicago, IL 60606

ABA Transit # 271070801
Account # █████ 1693
Account Name: DENTONS US LLP

The following information should also be provided on the wire transfer advice:

a.   Partner Name: Fletcher Alford

b.   RE: Capital Funds

c.   Dollar Amount $424,000

Please send an email notifying Robert Benson and Nanette Smith of the Capital loan fundings.

robert.benson@snrdenton.com   **and**   Nanette.smith@snrdenton.com

*Fund loan proceeds into checking account* █████████
& *wire them to the Firm's account listed above.*

**Dentons US LLP**
**Fletcher Alford**
**16-Sep-15**

**Capital account:**

Balance as of September 16, 2015        $281,635.20

**Balance in Capital:**        **$281,635.20**

Repayment of Loan        ($281,635.20)

Additional Balance Due to Partner        $0.00

| Payment No. | Date Paid | Amount | Balance | Payment To |
|---|---|---|---|---|
| 1 | 10/1/2015 | 7,823.20 | $273,812.00 | CitiBank |
| 2 | 11/1/2015 | 7,823.20 | $265,988.80 | CitiBank |
| 3 | 12/1/2015 | 7,823.20 | $258,165.60 | CitiBank |
| 4 | 1/1/2016 | 7,823.20 | $250,342.40 | CitiBank |
| 5 | 2/1/2016 | 7,823.20 | $242,519.20 | CitiBank |
| 6 | 3/1/2016 | 7,823.20 | $234,696.00 | CitiBank |
| 7 | 4/1/2016 | 7,823.20 | $226,872.80 | CitiBank |
| 8 | 5/1/2016 | 7,823.20 | $219,049.60 | CitiBank |
| 9 | 6/1/2016 | 7,823.20 | $211,226.40 | CitiBank |
| 10 | 7/1/2016 | 7,823.20 | $203,403.20 | CitiBank |
| 11 | 8/1/2016 | 7,823.20 | $195,580.00 | CitiBank |
| 12 | 9/1/2016 | 7,823.20 | $187,756.80 | CitiBank |
| 13 | 10/1/2016 | 7,823.20 | $179,933.60 | CitiBank |
| 14 | 11/1/2016 | 7,823.20 | $172,110.40 | CitiBank |
| 15 | 12/1/2016 | 7,823.20 | $164,287.20 | CitiBank |
| 16 | 1/1/2017 | 7,823.20 | $156,464.00 | CitiBank |
| 17 | 2/1/2017 | 7,823.20 | $148,640.80 | CitiBank |
| 18 | 3/1/2017 | 7,823.20 | $140,817.60 | CitiBank |
| 19 | 4/1/2017 | 7,823.20 | $132,994.40 | CitiBank |
| 20 | 5/1/2017 | 7,823.20 | $125,171.20 | CitiBank |
| 21 | 6/1/2017 | 7,823.20 | $117,348.00 | CitiBank |
| 22 | 7/1/2017 | 7,823.20 | $109,524.80 | CitiBank |
| 23 | 8/1/2017 | 7,823.20 | $101,701.60 | CitiBank |
| 24 | 9/1/2017 | 7,823.20 | $93,878.40 | CitiBank |
| 25 | 10/1/2017 | 7,823.20 | $86,055.20 | CitiBank |
| 26 | 11/1/2017 | 7,823.20 | $78,232.00 | CitiBank |
| 27 | 12/1/2017 | 7,823.20 | $70,408.80 | CitiBank |
| 28 | 1/1/2018 | 7,823.20 | $62,585.60 | CitiBank |
| 29 | 2/1/2018 | 7,823.20 | $54,762.40 | CitiBank |
| 30 | 3/1/2018 | 7,823.20 | $46,939.20 | CitiBank |
| 31 | 4/1/2018 | 7,823.20 | $39,116.00 | CitiBank |
| 32 | 5/1/2018 | 7,823.20 | $31,292.80 | CitiBank |
| 33 | 6/1/2018 | 7,823.20 | $23,469.60 | CitiBank |
| 34 | 7/1/2018 | 7,823.20 | $15,646.40 | CitiBank |
| 35 | 8/1/2018 | 7,823.20 | $7,823.20 | CitiBank |
| 36 | 9/1/2018 | 7,823.20 | ($0.00) | CitiBank |

$281,635.20